### FOY v. McGARRY et al.

(Supreme Court, Appellate Division, First Department.   December 31, 1913.)

NAMES (§ 18*)—FORECLOSURE SALE—REJECTION OF TITLE—HEIRSHIP—EVI-
DENCE.

    Evidence *held* sufficient to cast such doubt on whether the G. G., to
whom land was deeded, was the G. G. of whom C., a lunatic, was an heir,
as to authorize rejection of the title by the purchaser at mortgage fore-
closure sale; the mortgagor's title being a deed from the committee of
the lunatic under an order in proceedings for sale of lunatic's estate.

    [Ed. Note.—For other cases, see Names, Cent. Dig. §§ 4, 17; Dec. Dig.
§ 18.*]

Appeal from Special Term, New York County.

Action by John Foy against Frank McGarry and others to foreclose
a mortgage. From an order requiring him to complete title, Charles
A. Menet, the purchaser at foreclosure sale, appeals. Reversed, mo-
tion denied, and proceedings remitted, with directions.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOW-
LING, and HOTCHKISS, JJ.

J. J. Kramer, of New York City, for appellant.
John M. Rider, of New York City, for respondent.

HOTCHKISS, J.   By deed dated August 15, 1855, and recorded
July, 1856, the property was conveyed to one George Gilchrist. By
deed dated March 22, 1909, Hubbard, as committee of the estate of
Sarah A. Gilchrist Crisp, a lunatic, conveyed to the mortgagor. Ap-
pellant admits the regularity of the proceedings for the sale of the
lunatic's estate, but claims that they are not in their nature sufficient
to establish heirship, and, if they were, on their face they fail to show
that the lunatic was the heir of the George Gilchrist, grantee in the
1855 deed, although she apparently was the heir of a George Gilchrist.

It is not difficult to imagine very serious reasons why ex parte pro-
ceedings to sell lands of a lunatic should not be held to be the equiv-
alent of probate of heirship. It is not necessary, however, to pass
upon this question. Assuming, because of the identity of names, that
the burden was on the purchaser, I think the facts appearing on the
reference had in the proceedings to sell the lunatic's real estate cast
such doubt on the identity of the two Georges as to justify a rejection
of the title. This testimony in brief was as follows: One Booth
swore that he was a companion and fellow employé, in this city, of
one James Gilchrist, who died in 1866 in Jersey City, and whose widow
died subsequently; that James left him surviving two children, the
lunatic and one George, who died, unmarried, January 15, 1862, in this
city, and previous to his father, he then being "about 26 years old."
This would make George 19 years of age in 1855, the date of the deed.
The witness had never heard of any income from this property, which
in fact was a vacant lot. Gildersleeve, a real estate broker, 79 years
old, testified that he knew James and his son George, the latter having
come to see him "several times about the sale of a lot which he had in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Westchester county," and which he and Gilchrist went to see; Gilchrist telling him that he owned the lot and wanted to sell it. This was "about 1860 or 1861," when George "was about 25 or 26, just a young fellow." George lived on West Fourteenth street in this city. Attached to the referee's report in the lunacy proceedings is a certificate from the clerk of the Oneida Surrogate's Court that he had examined the records from January 1, 1862, to date, and found "no estate by the name of George Gilchrist." Why the certificate of the surrogate of Oneida county was produced is not explained. There is nothing else in the record to show that George died intestate. Nor is there any evidence whatsoever that James, the father of George, did not have children who died before James, leaving issue; the only proof being that James left George and the lunatic as his sole surviving children. It appears to be undisputed that the taxes and assessments were paid from 1855 to 1874, but at the time of the sale some $2,000 of taxes and assessments had accrued. No evidence was given to show by whom the taxes from 1855 to 1874 had been paid—a most material fact.

The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs, and the proceedings remitted to the Special Term, with directions to ascertain and allow to the appellant his reasonable counsel fees and other expenses for examining the title, and that the referee be ordered to return to the appellant his deposit on account of his purchase. All concur.